**STATE of Minnesota, Respondent,**

v.

**Joseph L. RAINER, Appellant.**

**No. C8–92–1595.**

Supreme Court of Minnesota.

July 16, 1993.

See also, 914 F.2d 1067.

Leslie J. Rosenberg, Sp. Asst. State Public Defender, Minneapolis, for appellant.

Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Thomas D. Hayes, Sherburne County Atty., Elk River, for respondent.

PAGE, Justice.

Appellant brought a petition in Sherburne County District Court for postconviction relief from his conviction for first-degree murder in the shooting death of Marla Forrest. Minn.Stat. §§ 590.01–.06 (1992). He argues that he is entitled to postconviction relief because he received ineffective assistance of counsel at his trial, and because he has new evidence which casts doubt on the account of one of the prosecution's main witnesses. The postconviction court denied relief to appellant. We affirm.

Joseph Rainer was convicted of premeditated first-degree murder and sentenced to life imprisonment for the shooting death of Marla Forrest on October 27, 1984. On direct appeal we affirmed the conviction. *State v. Rainer*, 411 N.W.2d 490 (Minn. 1987). Appellant then sought and was denied a writ of habeas corpus from the federal district court. The denial was affirmed by the Eighth Circuit Court of Appeals. *Rainer v. Department of Corrections*, 914 F.2d 1067 (8th Cir.1990); *cert. denied*, 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991).

The factual basis for the murder conviction was stated in our previous opinion:

Defendant and Marla Forrest had known each other since the summer of 1983 when Forrest began taking her car to defendant's gas station. The two spent time together and defendant wanted to get married, but Forrest was not prepared to make a commitment. Within the last two weeks before the shooting Forrest told friends that she planned to terminate the relationship.

On October 27, 1984, Forrest went to defendant's house so that he could re-

place the engine in her car. Her 9-year-old son Tobi went along. During the afternoon Forrest and defendant talked and drank beer, while Tobi amused himself. Forrest sounded normal and cheerful when her father telephoned and she told him that she would use defendant's car to get home. At one point during the afternoon Tobi heard an argument between Forrest and defendant.

At the end of the afternoon as Forrest was leaving, defendant walked her out to the car. According to the account of the incident defendant gave the police, he picked up a single shot 12-gauge shotgun that he had left lying in the breezeway, tucked it under his arm, and it accidentally fired, hitting Forrest in the back. He said that he had been shooting squirrels that morning and had left the gun in the breezeway and that he picked it up to get it out of the mist. Defendant's former wife, Maxine, testified that defendant made a habit of keeping his guns loaded. Tobi said that the gun was not in the breezeway but in the living room, leaning against the wall near the gun case. Defendant's tenant said that he did not remember seeing a gun in the breezeway when he walked through the breezeway in the early afternoon.

Medical evidence indicated that Forrest was shot in the back from one to two feet away at a downward angle of between 10 and 20 degrees. The wound was 44½ inches from Forrest's bare feet, and her boots added another 1¾ to 2 inches. Defendant measured between 47⅜ inches and 53 inches from stocking foot to armpit (measurements at different times yielded different results); his boots added another 1¾ inches. The downward angle and the measurements of the two bodies were relevant to the question of whether the gun was under defendant's arm when it went off, as he claimed, or whether it was at his shoulder, a normal position for intentional firing, as the state hypothesized.

Expert testimony concerning the gun established that the gun required cocking before firing, though it had no other safety device, and that a moderate to heavy amount of force was needed for pulling the trigger. The gun would not discharge without the trigger being pulled when it was tested by dropping it or striking it with a rubber mallet when it was cocked. No tests were made concerning pulling the gun along clothing, though the expert agreed that the gun could be cocked by catching it on clothing. The expert did not comment on whether the trigger could be pulled by drawing it across clothing.

*Id.* at 493–494. *See also Rainer v. Department of Corrections,* 914 F.2d at 1068–69.

Additional facts, not mentioned in our previous opinion, are material to appellant's petition. These facts are as follows:

Appellant's trial attorney, Daniel Eller, contacted Herr McDonald to be an expert witness for the defense, and to testify about the gun used to shoot Forrest. McDonald lived in New York, so Eller only talked to him over the phone. During one of their phone conversations, McDonald told Eller that it was unlikely that the gun could go off as appellant stated. Before he could look at the gun, however, McDonald had to go overseas and became unavailable for trial. Eller then looked for another expert.

Eller was referred to two experts in Minnesota, but because they were agents of the Bureau of Criminal Apprehension, he did not want to use them. He then contacted the Milwaukee Public Defender, who referred him to Richard Thompson, in Madison, Wisconsin.

After visiting Thompson and confirming that he was competent, Eller arranged for a member of the Sherburne County Sheriff's Department to transport appellant's gun and clothing to Madison. Sherburne County assigned Deputy Sheriff Ferdinand Trebesch to transport the gun and clothing. Trebesch remained with Thompson while he tested the gun, asking questions and giving advice about the tests. Thompson never asked Trebesch to leave. During the tests, Thompson evidently expressed disbelief in appellant's account that the gun went off accidentally. Trebesch noted

Thompson's disbelief, and reported it to the Sheriff's Department. Thompson never tested appellant's clothing.

During appellant's trial, Trebesch presented Eller with a note stating that Thompson said appellant was "full of shit." Eller and appellant then met with Thompson to discuss his proposed testimony, and it was decided not to call Thompson. The defense did not call an alternative expert. Instead, Eller supported appellant's defense of accident by cross-examining the state's BCA agent.

Eller called witnesses for the defense to testify as to appellant's love for Forrest and his desire to marry her. To counter this evidence, the state introduced testimony that Forrest did not love appellant and wanted to end their relationship. Eller did not object to the state's witnesses. Appellant waived his right to testify in his own defense.

About a year and a half after the conviction, appellant discovered new evidence, consisting of photographs of his home. These photos were taken by his insurance company two days after the shooting, and show that his gun case was in a slightly different location than shown by the photos the state introduced at trial which were taken about one year after the shooting.

■ After the writ of habeas corpus sought by appellant in the federal court was denied, he filed this petition for postconviction relief. The postconviction court denied relief to appellant. He now seeks review of that denial by this court. Appellant alleges that he was denied effective assistance of counsel because his attorney failed to prevent the expert witness for the defense from talking with Deputy Trebesch, failed to call an expert witness re-

garding the gun involved in the shooting, failed to have appellant's clothing tested for residue of gun powder, failed to move to suppress evidence, did not allow appellant to testify at trial, and did not bring a motion *in limine* nor object to hearsay statements regarding the victim's state of mind. As to his allegation that the newly discovered photos merit a new trial, appellant argues that these photos are more reliable than those of the state, that they cast doubt on Tobi's story that appellant picked up the gun while it was leaning against the gun rack, and support his theory of the case that he picked up the gun in the breezeway and accidentally shot Forrest.[1]

■ A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case. Minn.Stat. § 590.04, subd. 3. On appeal, the decision of the postconviction court is reviewed under an abuse of discretion standard, and the scope of review is limited to determining whether there is sufficient evidence in the record to sustain the postconviction court's findings. *Gustafson v. State*, 477 N.W.2d 709, 712 (Minn.1991). Here, the record contains sufficient evidence to support the postconviction court's findings.

The right to counsel is guaranteed by the Sixth Amendment of the United States Constitution. The Supreme Court has stated that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In order to receive postconviction relief on the grounds of ineffective assistance of counsel, a convicted defendant must show:

1. Appellant's pro se brief raises two additional issues. First, he argues that the state suborned perjury against him by Randy Lehner, his second wife. At his postconviction hearing, however, appellant waived this issue. We therefore deem this issue to be similarly waived on appeal. Second, he argues that the trial court erred by admitting *Spriegl* evidence of previous bad acts, specifically arguing that he was never convicted of any of the bad acts and that they were too old to be admissible. We upheld the

admission of the *Spriegl* evidence in appellant's direct appeal, stating that the evidence was admissible to show intent, or absence of mistake or accident. We also stated that the acts were not too old to be admissible. *State v. Rainer*, 411 N.W.2d at 496–98. When we have already heard an issue on direct appeal, we will not consider it again in a petition for postconviction relief. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).

First, * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The proper standard for attorney performance is that of reasonably effective assistance, and when a defendant complains of ineffective assistance of counsel, the attorney's performance must be shown to fall below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064–65.

█ Appellant argues that he was denied effective assistance of counsel because his attorney failed to tell Thompson, the expert witness for the defense, not to talk to Trebesch, the state investigator. The postconviction court found that appellant's complaint failed to meet the requirements of *Strickland*. The court stated that counsel had no reason to believe that Thompson would have spoken with Trebesch and that, therefore, there was no objective reason for counsel to warn Thompson not to speak to Trebesch. Further, the postconviction court found that even if Thompson had not spoken to Trebesch, Thompson's potential testimony would have been helpful to the state's case and damaging to the defense. Eller's failure to tell Thompson not to involve the state's investigator, therefore, did not materially affect the outcome of the trial. Thus, the findings of the postconviction court support its ruling that this argument fails to meet the requirements of *Strickland*. Therefore, there was not an abuse of discretion.

█ Next, appellant argues that he was denied effective assistance of counsel because his attorney failed to call an expert witness at trial. The postconviction court held that this complaint of ineffective assistance of counsel was, in fact, a complaint about Eller's trial tactics. We generally will not review an attorney's trial tactics. *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986).

Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel. Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight. Counsel must, after all, have the flexibility to represent a client to the fullest extent possible.

*Id.* (citation omitted). Because we will not conduct an independent review of Eller's trial tactics, the ruling of the postconviction court that Eller's failure to call an expert witness was a reasonable trial tactic will be upheld if the finding is supported by sufficient evidence in the record. We hold that sufficient evidence supports the ruling. For example, after speaking with McDonald and Thompson, Eller could not find another expert for the defense, and he felt that he supported the defense of accident by eliciting, from the state's gun expert, testimony that the gun could go off accidentally. After learning that the state would impeach Thompson, Eller discussed Thompson's proposed testimony with appellant and both of them decided not to call Thompson. The trial court is therefore affirmed in its ruling that Eller's failure to call an expert to testify did not amount to ineffective assistance of counsel.

█ Appellant also argues that he was denied effective assistance of counsel because Eller failed to have appellant's clothes tested for gun powder residue. The postconviction court found that Eller's failure to test the clothing was a reasonable trial tactic. This finding was not an abuse of discretion. Testing the clothing could have resulted in finding gun powder in the shoulder area only, a finding which would have been contrary to appellant's

story. Eller also used the state's failure to test the clothes to argue that the state failed to meet its burden of proof.

■ Likewise, we affirm the postconviction court's ruling that Eller's decision not to seek an omnibus hearing was a reasonable trial tactic. Appellant argues that Eller should have moved to suppress evidence consisting of his clothing, his boots, the gun that shot Forrest, a blood test taken by the police, and statements appellant made to the police. Appellant suggests no legal basis, however, upon which an objection to the admission of these items could be made. An attorney's failure to make a meaningless objection does not give rise to a claim of ineffective assistance of counsel. *State ex rel. Fruhrman v. Tahash*, 275 Minn. 242, 244–45, 146 N.W.2d 174, 176 (1966). ("[N]o inadequacy can be attributed to counsel for failing to make a motion which should have been denied had it been made.") We also note that Eller believed that admission of these items could actually be helpful to the defense.

■ Appellant next argues that Eller's refusal to allow him to testify at trial constituted ineffective assistance. The postconviction court heard testimony that, throughout the trial, Eller and appellant discussed the advantages and disadvantages of having appellant testify, and that Eller ultimately advised appellant that he thought appellant should not take the stand. Based on a review of the trial transcript, which included an *in camera* discussion between the trial judge and the appellant on this subject, the postconviction court found that appellant knew of his right to testify on his own behalf and knowingly waived that right.[2] We hold, therefore, that sufficient evidence exists in the record to support the postconviction court's finding on this issue, and we affirm the postconviction court.

■ Appellant's sixth claim of ineffective assistance of counsel is that Eller failed to object to hearsay statements about the victim, including statements about her state of mind. The postconviction court ruled that Eller's failure to object was reasonable. In *State v. Blanchard*, 315 N.W.2d 427, 432 (Minn.1982), we stated that hearsay statements about the victim's state of mind could be admitted when the defendant raises the defenses of accident, suicide, or self-defense. We also said that, in order to admit such hearsay, the trial court must weigh the probative value of the hearsay against its prejudicial effect, and a proper limiting instruction must be given to the jury. *Id.* In this case, the defense was accident, the first prong of *Blanchard*. Before the introduction of the testimony, the attorneys met with the judge in chambers, where he weighed the prejudicial effect against its probative value, the second part of *Blanchard*. When the testimony was admitted, the judge gave cautionary instructions, fulfilling the third *Blanchard* requirement. Because *Blanchard* was satisfied, there is sufficient evidence in the record to support the postconviction court's ruling that appellant did not receive ineffective assistance of counsel because Eller failed to object to introduction of testimony about the victim. As a whole, Eller's trial tactics did not amount to ineffective assistance of counsel, and we hold that the postconviction court's rulings in this area were not an abuse of discretion.

■ Appellant's final argument is that the newly discovered pictures he obtained from his insurance company warrant granting him a new trial. In order to gain a new trial based on newly discovered evidence, appellant must establish:

(1) that the newly discovered evidence was not within petitioner's or his counsel's knowledge before trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that it is not cumulative, impeaching, or doubtful evidence; and (4) that the evidence would probably produce a different or more favorable result.

*Wieland v. State*, 457 N.W.2d 712, 714 (Minn.1990). Assuming without deciding

2. The Honorable Robert B. Danforth conducted the postconviction hearing and was also the trial judge.

that appellant has met the first three elements of the *Wieland* test, his request for a new trial must be denied because he fails to meet the fourth element of the test.

In support of his request for a new trial, appellant argues that "[w]hile the state's photographs show the gun rack placed flat against a wall, the gun rack was wedged in the corner created where the two walls meet." He argues that because the pictures show that the rack was in the corner and not flat against the wall, that these pictures support his story that he picked up the gun in the breezeway and discredit Tobi's story that appellant brought the gun from inside the house. This argument was rejected by the postconviction court, which stated:

> That the photographs the Defendant submitted as new evidence do not establish that the gun could not have been at the general location that was indicated at trial, to wit, near the gun cabinet. All that was really important was the fact that the gun was in the same room as the gun cabinet and not in the breezeway. The State's theory of premeditation was that the Defendant brought the gun from the living room near the gun cabinet and followed the victim to the breezeway and shot her.

On direct appeal we stated that "[t]he presence of the gun in the living room, which the jury could have found from Tobi's testimony, would imply that the defendant picked up the gun in order to use it rather than to get it out of the wet." *State v. Rainer*, 411 N.W.2d at 496. We concluded that this fact, among others, supported the verdict. The new photos showing the gun rack in a different location in the living room do not alter that conclusion. As the newly discovered evidence is unlikely to produce a different or more favorable result, as required by *Wieland*, we hold that the postconviction court did not abuse its discretion by denying appellant a new trial based on the newly discovered photos.

Affirmed.