*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1345**

State of Minnesota,
Respondent,

vs.

George Jerry Matlock, Jr.,
Appellant.

**Filed July 7, 2014
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. 62-CR-12-9951

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota; and

Sean R. Somermeyer, Faegre Baker Daniels LLP, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant George Jerry Matlock Jr. appeals from his convictions of aiding and abetting burglary in the third degree and aiding and abetting theft. He argues that the district court plainly erred by not instructing the jury regarding accomplice testimony, and that it abused its discretion by denying his day-of-trial motion for a continuance to allow substitute counsel to prepare for trial. Because the district court's omission of the jury instruction did not affect Matlock's substantial rights and because the district court acted within its discretion in denying a continuance, we affirm.

## FACTS

Matlock and William Whisonant Jr. have known each other for approximately ten years. On the morning of December 14, 2012, they traveled together by bus to the campus of Northwestern College in Roseville. Matlock told Whisonant that he wanted information regarding admissions and financial aid, though Whisonant later testified that he did not believe Matlock.

The two arrived at Northwestern and entered a campus building where Matlock asked an employee for directions to the admissions office. Instead of going to the admissions office, however, the two went to a deserted basement hallway. They passed an empty office containing an unattended laptop. Whisonant saw the laptop and got Matlock's attention. According to Whisonant, he said, "I'm going to get it," to which Matlock replied, "[W]ell, go ahead and get it." Matlock stood by the door while Whisonant unhooked the laptop from its docking station and placed it into a computer

2

bag that was sitting on the desk, which took approximately 30 seconds. Whisonant testified that Matlock was "looking out to see if anybody was coming."

The two then went into another campus building. Dr. Mark Baden, a Northwestern faculty member, noticed Whisonant standing outside of Professor Larry Gronewold's office (a nameplate on the door contained Professor Gronewold's name). Dr. Baden approached Whisonant and asked if he could help him. As Dr. Baden approached, Matlock emerged from inside Professor Gronewold's office. Dr. Baden asked Matlock if he could help him, and Matlock replied that he was looking for Larry Gronewold to talk about financial aid. Dr. Baden became suspicious because Professor Gronewold has nothing to do with financial aid. Matlock then took out a cigarette, which Dr. Baden also found suspicious because Northwestern is a no-smoking campus. Dr. Baden further noticed that Whisonant was carrying a computer bag that resembled those that faculty members were issued and that Professor Gronewold was not in his office.

Dr. Baden told Matlock and Whisonant that he was uncomfortable with their presence in a faculty member's office without that faculty member being present. He also said, "I'm wondering about the computer case you're carrying," to which Whisonant responded "[I]t's mine." Dr. Baden knew that computers had been stolen out of faculty members' offices in the past. He told Matlock and Whisonant that he would accompany them to the financial-aid office, but first he used an office telephone to call campus security. Matlock and Whisonant walked away from Dr. Baden while he was on the phone. Dr. Baden looked into Professor Gronewold's office and saw that the computer

3

was missing. He correctly assumed that the bag on Whisonant's shoulder contained a stolen computer, though he wrongly assumed that it was Professor Gronewold's. Dr. Baden followed the two as they left the building.

Once outside, Matlock and Whisonant walked in different directions, and Dr. Baden decided to follow Whisonant. Neither Matlock nor Whisonant had responded to Dr. Baden's offer to show them to the financial-aid office. While following Whisonant, Dr. Baden called 911 from his cell phone. Matlock and Whisonant met up at some point while being followed, but then split up again as they walked toward the exit from campus. Dr. Baden began following Matlock outside of campus, and Matlock turned to yell at Dr. Baden to stop following him. A police officer pulled over to ask Dr. Baden if he was the one who called 911, and Dr. Baden pointed to Matlock as he was fleeing. The officer apprehended Matlock and transported him back to campus. Whisonant had been apprehended by different officers, and Dr. Baden later identified both men. The police determined that Whisonant had stolen the laptop and bag he had been carrying.

Days later, an investigator interviewed Matlock while he was in jail. Matlock said he went to Northwestern, "made some inquiries about admission, obtained some brochures, spoke to some people, and proceeded to leave when he was confronted by a person he identified either as a police officer, security guard, or some other employee of the school." Matlock claimed that he went to the campus alone, but two other men he did not know got off of the bus at the same stop. He claimed to have known about Northwestern because his son had practiced football there while attending Arlington High

4

School, but the investigator later confirmed that Arlington's football team has never practiced at Northwestern. Matlock also stated that he was "completing financial aid on the web," but he gave the investigator the wrong web address for the school (the one for Northwestern University in Evanston, Illinois). He also said that he had taken the ACT entrance test and scored a B or C. When the investigator told him that it was scored on a scale from 0 to 36, Matlock admitted that he had not completed the test, but he was sure he scored high enough to qualify for admission. Matlock was charged with aiding and abetting burglary in the third degree and aiding and abetting theft. *See* Minn. Stat. §§ 609.05, subd. 1, .52, subd. 2(a)(1), .582, subd. 3 (2012). His trial was set for February 25, 2013.

On the first day of trial, Matlock moved for a continuance. Matlock's family had raised enough money to retain a private attorney over the weekend, and Matlock wanted time for his new lawyer to adequately prepare for trial. Matlock had previously demanded a speedy trial, however, and the district court scheduled cases accordingly, with Matlock's trial set first on the trial block. The district court stated that Matlock's motion for a continuance was made 15 minutes after his trial was supposed to start, and therefore it was not timely, "particularly in a case where a speedy trial demand has been asserted and where the [district court] has prioritized the cases accordingly." The district court viewed Matlock's motions as "simply delay tactics" that were not "made for any other reason than to avoid trying" the case that day. It denied Matlock's motions, and his trial was set to start the next morning.

The next day, the district court made a record of additional reasons why it had denied Matlock's motion for a continuance. It noted that Matlock was served with a pretrial order on December 28, 2012, which stated that if Matlock wanted private counsel he should retain one "in time for the attorney to be able to prepare for trial." It also noted that the state had witnesses under subpoena and would be prejudiced by a continuance. The district court concluded by noting that it "ha[d] not been advised of any circumstances which could reasonably be classified as a sudden exigency or an unforeseen circumstance[]." A jury trial then ensued.

Whisonant testified at Matlock's trial under a plea agreement with the state regarding his own charges for burglary and theft of the Northwestern computer. He was impeached with evidence of: (1) a prior felony conviction, (2) his plea agreement with the state in exchange for testimony in Matlock's trial, and (3) his lies to law enforcement immediately after his crime. The district court did not instruct the jury that accomplice testimony must be sufficiently corroborated to find a defendant guilty beyond a reasonable doubt. But the district court did give a general instruction on assessing the credibility of witnesses.

The jury convicted Matlock of both counts, and the district court sentenced him to the statutory maximum of five years in prison. This appeal followed.

**DECISION**

**I. Accomplice Testimony**

Matlock argues that the district court erred because it failed to give an accomplice-testimony instruction to the jury before deliberations. Because Matlock did not object to

6

the jury instructions at trial, we review for plain error. *See State v. Vance*, 734 N.W.2d 650, 655 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). "Under this standard, we may review an unobjected-to error only if there is (1) error; (2) that is plain; and (3) that affects substantial rights." *Id.* at 655–56. If these three prongs are met, "we then decide whether we must address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted).

A district court is required to instruct the jury on accomplice testimony when appropriate even if the defendant does not request the instruction. *State v. Strommen*, 648 N.W.2d 681, 689 (Minn. 2002). Because the district court neglected to give such an instruction, the first two elements of the plain-error analysis are satisfied. *See State v. Reed*, 737 N.W.2d 572, 584 & n.4 (Minn. 2007). Matlock then has the burden to show that the lack of the accomplice instruction affected his substantial rights, which requires a showing that it is reasonably likely that the giving of the instruction would have had a significant effect on the verdict. *See id.* at 583 ("[A]n error affects substantial rights where there is a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." (quotation omitted)). As shown below, Matlock has not met his burden of showing that the lack of instruction affected his substantial rights.

"A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. To be guilty of aiding and

abetting a crime, the defendant does not need to have participated actively in the commission of the crime. *Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004). The state must prove, however, that the defendant had "knowledge of the crime and intended his presence or actions to further the commission of that crime." *State v. Clark*, 755 N.W.2d 241, 257 (Minn. 2008) (quotation omitted). "Jurors can infer the necessary intent from factors including: defendant's presence at the scene of the crime, defendant's close association with the principal before and after the crime, defendant's lack of objection or surprise under the circumstances, and defendant's flight from the scene of the crime with the principal." *State v. Swanson*, 707 N.W.2d 645, 659 (Minn. 2006) (quotation omitted).

But "[a] conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2012). "Corroborative evidence need not, standing alone, be sufficient to support a conviction, but it must affirm the truth of the accomplice's testimony and point to the guilt of the defendant in some substantial degree." *Reed*, 737 N.W.2d at 584 (quotation omitted). "Circumstantial evidence indicating the defendant's participation in the crime is sufficient to corroborate the accomplice's testimony." *State v. Bowle*s, 530 N.W.2d 521, 532 (Minn. 1995).

Matlock contends that "there is no direct evidence other than Whisonant's testimony that Matlock had any role in Whisonant's stealing the laptop" and that "there is no circumstantial evidence that 'clearly' implicates Matlock." The state counters persuasively that Whisonant's testimony was corroborated in two ways: (1) Matlock's

suspicious behavior when confronted by faculty after Whisonant had taken the computer and (2) Matlock's lies to law enforcement after he was in custody.

Dr. Baden discovered Matlock in Professor Gronewold's office, which was unattended.[1] When Dr. Baden confronted Matlock, Matlock said that he was looking for Professor Gronewold to discuss financial aid, apparently because he saw the professor's nameplate on the wall. Professor Gronewold played no role in financial-aid decisions at Northwestern, however. Matlock then fled the scene when Dr. Baden called campus security. This evidence shows that Matlock was attempting to flee capture, which is circumstantial evidence that Matlock and Whisonant had stolen the computer.

In addition, Matlock told several lies to law enforcement after he was in custody. He said he "obtained some brochures" about Northwestern and that he had scored a B or a C on the ACT test, even though it is scored from 0 to 36. He also lied about his son having practiced football at Northwestern while enrolled at Arlington High School. These lies are circumstantial evidence of the crime. All of the above corroborated Whisonant's testimony. *See Bowle*s, 530 N.W.2d at 532.

Matlock further asserts that the state had to prove intent and that "[m]ere presence and inaction are not enough, even when coupled with knowledge that a crime is being committed." And he argues that any corroborating evidence presented at trial "was no more consistent with guilt than it was with Matlock's stated reasons for being on

---

[1] The state argued to the jury that this, by itself, was a burglary because the jury could infer that Matlock had entered the office without consent and with the intent to commit a theft.

9

Northwestern's campus." The state counters, and we agree, that "Matlock's strange behavior, flight, and lies show his guilty mind."

The state correctly asserts that the jury can infer intent by relying on circumstantial evidence. *See Swanson*, 707 N.W.2d at 659 (explaining that intent can be inferred from circumstantial evidence); *Bowle*s, 530 N.W.2d at 532 (stating that circumstantial evidence can corroborate accomplice testimony). Evidence of Matlock's actions on campus, flight from campus, and later lies to law enforcement sufficiently corroborate Whisonant's testimony that Matlock acted as a lookout while Whisonant stole a laptop and computer bag. *See Clark*, 755 N.W.2d at 257 (noting that an accomplice needs to have knowledge of the crime and intent to further its commission). Evidence that Matlock and Whisonant have known each other for ten years is additional support for this conclusion. *See Swanson*, 707 N.W.2d at 659.

Upon this record, Matlock has not met his burden to show that, had the accomplice-testimony instruction been given, a reasonable likelihood exists that it would have had a significant effect on the verdict.[2] *See Reed*, 737 N.W.2d at 583–85. Accordingly, the district court's failure to give the accomplice-testimony instruction did not affect Matlock's substantial rights.

---

[2] The state argues that "it is also relevant that the jury was properly instructed on evaluating witness credibility." *See State v. Jackson*, 726 N.W.2d 454, 461 (Minn. 2007) (noting that an "adequate general instruction on the credibility of witnesses" may mitigate the prejudicial effect of the district court's failure to give an accomplice-testimony instruction). Our decision does not rest upon this ground, but we note that Whisonant was impeached by evidence of: (1) his prior convictions, (2) his plea agreement with the state in exchange for his testimony against Matlock, and (3) his prior lies to law enforcement after his arrest. The jury had every reason to disbelieve Whisonant's testimony, yet it still found Matlock guilty beyond a reasonable doubt.

## II.     Denial of Continuance

Matlock also challenges the district court's denial of his day-of-trial motion for a continuance to allow newly retained counsel to prepare for trial.  A district court's denial of a continuance to allow a defendant to retain new counsel is reviewed for an abuse of discretion.  *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987).  The decision whether to grant a request for substitute counsel is also within the district court's discretion.  *State v. Clark*, 722 N.W.2d 460, 464 (Minn. 2006).  "The reviewing court must examine the circumstances before the [district] court at the time the motion was made to determine whether the [district] court's decision prejudiced [the] defendant by materially affecting the outcome of the trial."  *State v. Turnipseed*, 297 N.W.2d 308, 311 (Minn. 1980).

A defendant's right to the assistance of counsel includes a fair opportunity to secure an attorney of the defendant's choice.  *State v. Fagerstrom*, 286 Minn. 295, 298, 176 N.W.2d 261, 264 (1970); U.S. Const. Amend. VI; Minn. Const. art. I, § 6.  Consideration of the facts and circumstances surrounding a district court's denial of a continuance generally focus on the timeliness of the request and the diligence of the defendant in obtaining new counsel.  *See, e.g.*, *State v. Johnson*, 417 N.W.2d 143, 145 (Minn. App. 1987) (concluding appellant had ample opportunity to hire private counsel in four months between arrest and omnibus hearing).  A continuance is likely to be denied when the motion is brought close to trial, absent unforeseen circumstances.  *State v. Ahearn*, 292 Minn. 449, 450, 194 N.W.2d 256, 256 (1972).  Because the right to counsel must be balanced against the public interest in maintaining an efficient judicial system, a

defendant's motion for a continuance to obtain counsel is properly denied when the defendant has not been diligent in obtaining counsel or preparing for trial. *State v. Courtney*, 696 N.W.2d 73, 82 (Minn. 2005).

Matlock contends that he moved the district court as soon as possible after his family had gathered enough money to retain private counsel. He notes that the state initially responded that it would not oppose the motion if Matlock withdrew his speedy-trial demand, which he then withdrew. But Matlock's speedy-trial demand affected the district court's administration of its docket from the outset. Matlock never notified the court that he was attempting to gather enough resources to hire private counsel and that he may need a continuance in the future. Rather, he waited until the day of trial to withdraw his speedy-trial demand. Nor did Matlock cite any unforeseen circumstances to justify his day-of-trial continuance request.

Under these circumstances, the district court did not abuse its discretion by denying the motion. *See Rainer*, 411 N.W.2d at 495 (noting that a denial of a motion for a continuance is reviewed for an abuse of discretion); *see also Courtney*, 696 N.W.2d at 82 ("A motion for a continuance is properly denied when the defendant has not been diligent in procuring counsel or in preparing for trial."); *Ahearn*, 292 Minn. at 449, 194 N.W.2d at 256 (noting that a day-before-trial continuance request should be denied absent unforeseen circumstances). Because we conclude that the district court acted within its discretion in denying the motion, we need not consider whether the denial

prejudiced Matlock by "materially affecting the outcome of trial." *See Turnipseed*, 297

N.W.2d at 311.

     **Affirmed.**