(636 P.2d 807)

No. 52,520

STATE OF KANSAS, *Appellee,* v. JOHN THOMAS, *Appellant.*

Opinion filed November 25, 1981.

*Fred Spigarelli* and *Timothy A. Short,* of Pittsburg, for appellant.

*Michael F. McCurdy,* assistant county attorney; *Doug Baker,* county attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G. MILLER, District Judge Retired, assigned.

MEYER, J.: John Thomas (appellant) appeals from his conviction of involuntary manslaughter, K.S.A. 21-3404.

Appellant operated a small private club on the east side of Pittsburg, Kansas, called the Pan Club. On April 19, 1978, four troublemakers entered his bar and began breaking glasses against the wall. Appellant confronted the group with a gun to force them out of the club. The gun discharged and one of the group was fatally wounded. Appellant contends the gun discharged accidentally. Appellant was charged with voluntary manslaughter. A jury convicted appellant of the lesser included offense of involuntary manslaughter.

Appellant asserts several trial errors as the basis for appeal.

The State, over objection, was allowed to ask the policeman who advised appellant of his rights whether appellant had made any statements. The policeman stated no and that appellant said he wanted to talk to his attorney.

The prosecutor asked Floyd L. Bradley, a former Pittsburg policeman now with the Kansas Bureau of Investigation, "Have you ever been assaulted and battered by John Thomas?" Defendant objected and the objection was sustained off the record. The trial court did not announce its ruling on the objection or instruct the jury to disregard the matter.

Appellant further complains of juror misconduct, as one juror went to a club where the conversation centered about what they would do if confronted with a situation such as appellant had faced and whether a club owner should keep weapons on the premises. The juror then went to the Pan Club, the scene of the shooting. The trial court held, after a hearing, that appellant was not prejudiced by the alleged misconduct of the juror.

Lastly, appellant objected to Instruction No. 3 which defined involuntary manslaughter, because the court took judicial notice of, and included in the instruction, a city ordinance prohibiting the shooting of firearms within the City of Pittsburg.

We first address the question as to whether the court erred in allowing evidence of appellant's silence after the *Miranda* warnings were given.

Appellant objected to questions of the prosecutor who asked a policeman if appellant had made any statements after being

advised of his *Miranda* rights. The policeman replied that appellant said he wanted to see his attorney and that he didn't make any statements to the policeman.

"The use for impeachment purposes of a defendant's silence at the time of his arrest and after receiving *Miranda* warnings, violates the due process clause of the Fourteenth Amendment to the United States Constitution. (Following *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 [1976].)" *State v. Mims,* 220 Kan. 726, Syl. ¶ 1, 556 P.2d 387 (1976).

The State argues that because the questions were asked on direct examination of the police officer, they were not intended to impeach the credibility of appellant's story.

It was stated in dicta in *State v. Fisher,* 222 Kan. 76, 83, 563 P.2d 1012 (1977):

"No valid distinction can be made with respect to testimony on direct or cross-examination concerning the accused's silence at the time of his arrest because the potential for prejudice is present in both situations."

The court relied upon *United States v. Impson,* 531 F.2d 274 (5th Cir. 1976).

In *State v. Satterfield,* 3 Kan. App. 2d 212, 592 P.2d 135, *rev. denied* 226 Kan. 793 (1979), it was held that the court erred when it allowed the introduction of evidence of defendant's election to remain silent in the absence of his attorney. The testimony objected to in *Satterfield* involved direct examination of a police officer. However, the court concluded that such was harmless error. But see *Lassley v. State,* 2 Kan. App. 2d 158, 576 P.2d 1094 (1978), where the court considered the fact that the references to post-*Miranda* warning silence were all during the State's case-in-chief, and not in cross-examining the defendant or in rebuttal. The court stated:

"While this evidence was all designed to show guilty knowledge, none was directly used to impeach defendant's alibi except by way of anticipation." 2 Kan. App. 2d at 161.

Regardless of the conflicting cases, as to whether it is material that such evidence was admitted on direct rather than on cross-examination, we hold the view that admission of such evidence at any time violates the principles of *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976).

Appellee also asserts that the error, if any, was harmless.

"In applying the Kansas harmless error rule (K.S.A. 60-2105) to a federal constitutional error a court must be able to declare the error had little, if any, likelihood

of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt. [Citation omitted.] Where the evidence of guilt is of such direct and overwhelming nature that it can be said the misconduct of counsel could not have affected the result of the trial, such misconduct is harmless error." *State v. Hamilton*, 222 Kan. 341, 345, 564 P.2d 536 (1977).

It does not appear that the evidence of post-arrest silence, standing alone, would affect the verdict. However, additional errors are found herein.

Appellant also cites as error a question of the prosecution as to whether the witness, a former policeman, had ever been assaulted and battered by John Thomas, the appellant. Appellant's counsel objected, and the court sustained the objection at the bench, but the ruling was not announced, nor was the jury instructed.

The prosecution had asked a similar question at appellant's first trial, and the trial court had sustained appellant's objection then as well, also in an off-the-record discussion. The actions of the prosecutor in asking the question with regard to evidence he knew to be inadmissible were improper and constituted misconduct by counsel, as the evidence was clearly inadmissible under K.S.A. 60-455 and 60-447. The jury should have been instructed to disregard the matter.

Appellant's next contention is that the court erred in holding that alleged juror misconduct was not prejudicial to appellant.

The trial court held a hearing on alleged juror misconduct and the following testimony was taken.

Charles A. Rice, a Pittsburg policeman, testified that the juror had gone to the Triple R Lounge and was seated at the bar. She stated that she was on the jury for the John Thomas case. The group at the bar discussed what they would do if some guys came in and started tearing up the place, and what they would do to defend the premises. The managers of the Triple R Lounge stated they didn't have weapons in their bar and that they could make a phone call if they had problems. The group made no comments specifically concerning any belief that John Thomas was guilty or innocent. Mr. Rice stated at the bar that he thought it wasn't right for appellant to be using a gun, but that appellant was scared and normally would not have used a gun since he was not a vicious person. Mr. Rice stated that the juror did join in the discussion but didn't discuss her opinion as to how she would have handled it or whether she thought John Thomas was guilty or innocent.

Sandra Lee Burke, a friend of the juror, also testified. She said

that the juror had told her that she had been at the Pan Club the night after the first day at trial. Then, the following night (after the verdict) the juror went back and was thrown out, allegedly because she had gone against appellant at the trial. The juror told her friend that she was upset because she had persuaded the jury to go for an involuntary manslaughter verdict instead of voluntary manslaughter.

Richard Sell, the foreman of the jury in the case, also testified. He stated that the juror had not mentioned that she had been to the Pan Club and didn't mention any discussion with others. He stated she expressed her opinion, but no more than anyone else.

Patricia Rohrbaugh, a manager of the Triple R Lounge, also testified. She stated that the juror had come into the Triple R Lounge and sat at the bar. The juror simply told Rohrbaugh that she had been picked to serve on the jury in the John Thomas case.

The juror herself testified that she went to the Triple R Lounge, and didn't talk to anyone about the merits of the case or what had been testified to. She denied that she had talked to other customers about what they would have done had a similar incident occurred. She stated that she never stated any opinions as to whether she thought appellant was guilty or innocent.

She testified that she then went to the Pan Club, the scene of the crime, and appellant opened the door and said, "Norma, don't cause any trouble," and the juror said, "I am not speaking to you." Appellant said, "Okay." So she went in and appellant left. She stated that she didn't tell other jurors that she had been to the Triple R Lounge and the Pan Club.

The juror stated that she had not reached an opinion regarding the guilt or innocence of appellant prior to the submission of the case to the jury. She stated she didn't think appellant shot the victim deliberately. That opinion, she claimed, was formed only after she heard all the evidence. She also stated that she didn't hear Rice's discussion but that Pat Rohrbaugh had said that after the trouble she had had with the victim's companions before, she would have never let them in her place to start with.

The trial court held that while the juror's action bordered on misconduct, there had not been a showing of prejudice. The other jurors were not aware she was at either bar. The appellant was convicted of the lesser offense that was instructed on.

The law with regard to juror misconduct was stated in *State v.*

*Allen,* 4 Kan. App. 2d 534, 537-538, 609 P.2d 219, *rev. denied* 228 Kan. 807 (1980), citing from *State v. Coburn,* 220 Kan. 743, 746-7, 556 P.2d 376 (1976):

" 'Not every jury is to be disqualified because of some improper communication or contact made to a juror prior to or during trial. The granting of a mistrial or new trial because of such conduct is generally regarded as resting in the sound discretion of the trial judge who is best able to assess the impact of any such approach upon the fairness of the trial. [Citation omitted.] To warrant reversal of a judgment because of improper contact or communication between a juror and an outsider, there must be some showing or indication of injury, actual or potential, to the complaining party, or the act or conduct complained of must be such as to afford reasonable grounds to question the fairness of the trial or the integrity of the verdict, or as would tend to destroy or impair public confidence in trial by jury. [Citation omitted.] The substance of the communication may be important. If the comment relates to the merits of the case, it will more likely to be found prejudicial. However, if it relates to the case merely in a general or incidental manner it will more likely be found harmless. [Citation omitted.]'

" '[I]t must be shown that remarks so made were such as would necessarily prejudice the party complaining, or it must be shown that prejudice did result therefrom, in order to warrant this court in directing new trial . . . .' "

It is noted that the jury was instructed on self-defense so that the issue was before them of whether appellant was justified in the use of the gun as reasonable force necessary to protect his property.

The discussion at the two clubs centered around what should have been done to protect the club. While we would tend to think that the jury would have found that using a gun is not reasonable force in spite of the juror misconduct, we view it as a close question whether the juror misconduct here was prejudicial to appellant. We conclude it is clear that juror misconduct occurred, and that, standing alone, would probably not have prejudiced appellant. However, such misconduct must be weighed together with other trial errors mentioned herein.

The next issue raised is whether the court erred in including the city ordinance in the involuntary manslaughter instruction.

Appellant's attorney objected to Instruction No. 3, the involuntary manslaughter instruction, because judicial notice had been given to the Pittsburg city ordinance and said ordinance had been included in the involuntary manslaughter instruction.

The instruction given stated:

"The offense of voluntary manslaughter includes the lesser included offense of involuntary manslaughter. If you find the defendant guilty of voluntary man-

slaughter, then you need not consider the lesser offense. However, if you cannot agree that the defendant is guilty of voluntary manslaughter, you shall consider if he is guilty of involuntary manslaughter.

"To establish the charge of involuntary manslaughter, each of the following claims must be proved:

1. That the defendant unintentionally killed Edward Jameson;

2. That it was done while in the commission of an unlawful act of shooting a firearm within the City of Pittsburg, Kansas, under circumstances that evidenced a realization of the imminence of danger to the person of another coupled with a reckless disregard for the probable consequences of such conduct; and

3. That said killing occurred on or about the 19th day of April, 1978, in Crawford County, Kansas.

"The act of shooting a firearm in the City of Pittsburg, Kansas, is against the ordinances of said city and is unlawful."

### Involuntary manslaughter is defined by K.S.A. 21-3404:

"Involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally *in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner.* As used in this section, an 'unlawful act' is any act which is prohibited by a statute of the United States or the state of Kansas or an ordinance of any city within the state which statute or ordinance is enacted for the protection of human life or safety." (Emphasis added.)

### The Pittsburg city ordinance relied upon in the instruction is Section 15-404:

"DISCHARGING FIREARMS. Every person who shall discharge firearms within this city shall, upon conviction, be punished by a fine not exceeding One Hundred Dollars ($100.00): Provided, That the provisions of this section shall not apply to the discharging of firearms in any licensed shooting gallery or by a gunsmith in his trade, or by the officers of the law in the discharge of their duties."

Appellant first states in his brief that he was not given any advance notice and was not afforded an opportunity to prepare to meet the request for judicial notice of the statute as required by K.S.A. 60-409(c)(2). Appellant raises this for the first time on appeal. Appellee states in its brief that the fact that the ordinance would be relied upon as the underlying misdemeanor for involuntary manslaughter was communicated to defense counsel well in advance of trial. Since appellant did not raise the issue at trial we have no statement in the record as to which contention is true.

"A point not raised before, or presented to, the trial court cannot be raised for the first time on appeal before this court." *Fleming v. Etherington,* 227 Kan. 795, Syl. ¶ 7, 610 P.2d 592 (1980).

Appellant further argues that the ordinance is not a "positive law which is enacted for the protection of human life or safety."

We must determine as a matter of law whether the unlawful act relied upon involves a statute or ordinance enacted for the protection of human life or safety. *State v. Brooks,* 187 Kan. 46, 354 P.2d 89 (1960). We hold that the ordinance prohibiting the discharge of firearms within the city has its purpose in the protection of human life or safety.

Further, appellant argues that Section 15-404 of the ordinance only prohibits the intentional discharge of firearms. A reading of the ordinance indicates that any discharge of firearms is prohibited, whether intentional or accidental.

Lastly, appellant argues that when the jury foreman asked for clarification of Instruction No. 3, the trial court should have given further instruction. Under K.S.A. 60-248(*e*), the trial court may in its discretion make a response to the request of the jury for further information as to the law, as the court finds to be required under the circumstances.

"[I]nstances may sometimes occur in the course of a trial where the jury raises questions which are irrelevant or which are already adequately covered by the original instructions. Under those circumstances the trial court may decline to answer such questions and direct the jury to reread the instructions already given. A trial court is vested with a great amount of discretion in answering questions directed to him by a jury after the jury has begun its deliberations. The important consideration is that the jury be properly instructed on the essential issues presented at the trial and this is particularly true in a criminal proceeding where the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried." *State v. Bandt,* 219 Kan. 816, 823-824, 549 P.2d 936 (1976).

Appellant merely asserts that the jury asked the judge a question and was confused. He has not indicated that the essential elements of the crime were not presented. The instruction seems to contain all of the elements of the statute and follows PIK Crim. 56.06 (1971). We see no abuse of discretion in failing to further instruct the jury.

We doubt if any of the aforementioned irregularities would, individually, constitute prejudice to the appellant. We believe, however, that cumulatively, the admission of evidence of appellant's post-arrest silence, the failure to instruct the jury to disregard a prosecutor's improper question, and the juror misconduct

were such that the jury may have reached a different result had they not occurred.

Reversed and remanded.