No. 53,249

STATE OF KANSAS, *Appellee*, v. JEFFERY LYNN ASHWORTH, *Appellant.*

(647 P.2d 1281)

Opinion filed July 16, 1982.

*Calvin K. Williams,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

*Leonard W. McAnarney,* of Lyndon, argued the cause and was on the brief for appellant.

The opinion of the court was delivered by

McFARLAND, J.: Jeffery Lynn Ashworth appeals his jury trial conviction of second-degree murder (K.S.A. 21-3402). Diverse issues are asserted on appeal.

The facts are synopsized as follows. On June 13, 1980, defendant and his roommate, David Cook, drove to Quenemo, Kansas, to attend an event known as a "Friday the Thirteenth" celebration. During the course of the evening they crossed paths with Terry Ferguson, whom defendant had previously met. With Ferguson was Randy Sible, later to become the victim. The four young men talked briefly and then parted company.

Later while Ferguson and Sible were watching the motorcycle races, defendant walked up to them. Defendant had both a gun and a knife in his belt. Shortly thereafter, Ferguson observed defendant with one hand on the back of Sible's neck and the other

hand holding a knife to Sible's throat. When Ferguson asked defendant what was going on, he answered, "Well, nothing, nothing" and put the knife away. Two or three minutes later the defendant said, "I've got a gun, too, m_____ f_____." Defendant then pulled out the gun and, as he did so, the gun struck Ferguson in the cheek. Defendant, according to Ferguson, then leveled the gun down at Sible's chest and shot him. Sible bled to death in moments as the bullet had ruptured his aorta.

According to defendant's version of the events: (1) the shooting was accidental; (2) he did not know Sible and was not angry with him; and (3) he did not intend to shoot anyone. Defendant testified the gun fired when it was bumped by Terry Ferguson. Defendant left the scene after the shooting and was subsequently arrested in the State of Arizona. Other facts will be stated where necessary to the discussion of particular issues.

Defendant's first issue is a three-pronged challenge to the validity of his preliminary hearing. Defendant argues that he was denied his right to a full and fair preliminary hearing pursuant to K.S.A. 22-2902 because: (1) the prosecution failed to give defendant names, addresses and telephone numbers of witnesses; (2) the court refused to allow a continuance in order that a tape recording of Terry Ferguson's statement to police could be transcribed; and (3) the defendant was precluded from calling Officer Max Ferguson, a subpoenaed witness.

As to the first point, the county attorney provided defense counsel all of the information he had. Defense counsel desired to subpoena all known witnesses but was thwarted in doing so by virtue of faulty addresses of some of the alleged witnesses. This difficulty was not unusual considering the circumstances involved. There is no indication, nor is it alleged, that the State intentionally withheld any information in its possession.

The second point concerns a taped statement given by Terry Ferguson to investigating officers. The trial court refused to grant a continuance in order for a transcription to be made because the tape was unintelligible and due to the number of continuances already granted to defendant.

The third point was the inability to call Officer Max Ferguson as a witness. Officer Ferguson was ill at the time of the preliminary hearing and unable to be present. Apparently Officer Ferguson's only relevant involvement with the case was through the

making of the witness Ferguson's taped statement. Inasmuch as the tape was not considered by virtue of its inaudibility, the trial court concluded the officer's testimony would not be relevant.

The purpose of a preliminary hearing was discussed in *State v. Ramsey,* 228 Kan. 127, 132, 612 P.2d 603 (1980), where it was stated:

"At the outset it may be stated a preliminary examination is not a trial of a defendant's guilt; it is rather an inquiry whether the defendant should be held for trial. Its principal purpose is the determination of whether a crime has been committed and whether there is a probability that the defendant committed the crime. Its main object is to apprise the accused of the nature of the crime or crimes charged against him, and to apprise him partially, at least, of the sort of evidence he will have to combat when he is subjected to formal prosecution in the district court."

A review of the record shows eight witnesses were called to testify at the preliminary hearing including the State's main witness, Terry Ferguson. Additionally, evidence as to the cause of death was presented to support the findings that a crime had been committed and that defendant had probably committed it. Defendant was freely allowed to cross-examine witnesses, and was certainly apprised of the nature of the crime charged against him and of the sort of evidence he would have to combat at the trial.

The first issue, in its entirety, is considered and held to be without merit.

The second issue is alleged error by the trial court in refusing to discharge the defendant for failure of the county attorney to produce certain items. The items in question were the previously referred to Ferguson tape and a letter written by defendant to David Cook while in an Arizona jail awaiting extradition. It appears that the tape was reasonably made available to defense counsel. It further appears that the letter in question was made available promptly after the order for the production was entered. No error is shown in regard to this issue.

The third issue is alleged error in permitting the State to cross-examine defendant as to certain contents of the Cook letter. The letter from defendant to David Cook was not introduced into evidence and is not before us. Without the letter it is rather difficult to follow the lengthy discussion among court and counsel concerning same. Ultimately, the State was permitted to cross-examine the defendant on particular subject matters relative to the letter. Generally they were: (1) failure of defendant to

indicate the shooting was accidental when discussing the incident; (2) defendant's requests pertaining to what Cook should say about the shooting; and (3) defendant's expressed intention to establish an insanity defense.

We have carefully considered the record of the cross-examination of the defendant relative to the Cook letter and find no reversible error in connection therewith.

The fourth issue is whether the trial court erred in refusing to order a change of venue. In *State v. Schlicher*, 230 Kan. 482, 484, 639 P.2d 467 (1982), the rules relative to change of venue were summarized as follows:

"(1) the burden of proof is on defendant, (2) not only prejudice must be shown but it must be such prejudice as to make it reasonably certain the defendant cannot obtain a fair trial, (3) there must be more than speculation, (4) the state is not required to produce evidence refuting that of the defendant, and (5) granting a change of venue lies within the sound discretion of the trial court and its ruling will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant."

In support of his motion for change of venue, defendant introduced affidavits from certain attorneys practicing in Osage County to the effect they believed defendant could not get a fair trial in that county. Additionally, defendant presented copies of media stories and testimony of media personnel relative to the news coverage of the case. There is nothing in the record before us indicating there was any particular difficulty in selecting a jury nor has such been alleged.

The news media coverage of the event appears to have been objective and factual with no sensationalism. The affidavits of attorneys are basically speculative in nature. Applying the afore-cited standards to the facts herein, we are satisfied this point is without merit.

The fifth issue is alleged error by the trial court in admitting repetitious and gruesome photographs taken during the performance of the autopsy on the deceased. Seven color photographs of the deceased were admitted into evidence. Three were taken immediately prior to commencement of the autopsy. Two show the bullet entry wound in the upper left side of the chest and the other shows the bullet exit wound in the upper right side of the back. The other four photographs show the body after it has been disturbed by autopsy procedures. One of these four portrays the bullet exit wound with a surgical probe in it to indicate the angle

of the wound. These first four photos, while not pleasant, are without question relevant and admissible. The real controversy pertains to the other three photographs. These three photographs, taken at successive points in the conduct of the autopsy, were used in the testimony of Dr. Dwight Adams to illustrate his findings as to the path of the bullet through deceased's body on an oblique plane. As would be expected, these latter photographs are gruesome by any standard. This fact, taken by itself, does not automatically render the photos inadmissible. As we held in *State v. Henson,* 221 Kan. 635, Syl. ¶ 3, 562 P.2d 51 (1977):

> "In a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to testimony of a doctor as to the cause of death even though they may appear gruesome."

*State v. Boyd,* 216 Kan. 373, 532 P.2d 1064 (1975), involved some fourteen autopsy photographs. In *Boyd* the court recognized the general principles as follows:

> "The defendant further urges that the trial court committed prejudicial error in allowing the state to introduce into evidence photographs of the body of the deceased taken at the autopsy. He contends they were repulsive, inflammatory, without probative value, and highly prejudicial to the defendant's right to a fair trial. In *State v. Randol,* 212 Kan. 461, 513 P.2d 248, we held that when photographic evidence is used by a coroner in describing the wounds in the body and internal organs of the victim, which wounds were received as a result of a crime of violence, such evidence is relevant and admissible to establish material facts, such as the manner and cause of death. In *Randol* we cited a number of cases where this rule has been applied. We pointed out that the trial court has broad discretion to exclude such evidence if it finds that such photographic evidence is unduly repetitious and offered solely to prejudice the minds of the jurors." 216 Kan. at 377.

Applying these principles to the photos before it, the court stated:

> "Several of the photographs show the angle at which the deceased's body was penetrated by a sharp instrument and would seem to be reasonably necessary to explain the testimony of the state's medical witness. We believe, however, that exhibit 39 was so gruesome and repulsive that the trial court abused its discretion in admitting that exhibit into evidence. In our opinion the offer of this exhibit could be but for a single purpose—to inflame the minds of the members of the jury. This court has gone a long way, perhaps too far, in countenancing the introduction of grisly, gruesome photographs. Here exhibit 39 shows the body of the deceased cut open from chin to groin and laid out like a disemboweled beef in a packing plant. A flap of chest skin partially covers the deceased's face and the chest and abdominal organs of the deceased are presented in full view. In this case the cause of death of the victim was really not in dispute. The state's medical expert made it clear that death was due to internal bleeding resulting from stab

wounds. Some of the photographs which were admitted could have been helpful to the jury by showing the angle of penetration of the murder instrument into the deceased's body. We fail to see the necessity, however, of the state's offering repetitious exhibits to prove the same point. In our judgment the trial court abused its discretion in admitting into evidence repetitious photographs of the deceased's body taken at the autopsy and especially exhibit 39." 216 Kan. at 377-378.

See also *State v. Clark*, 218 Kan. 18, 542 P.2d 291 (1975), which obviously involved a substantial number of autopsy photographs although we do not know the precise number. The court found prejudicial error in the admission of the photographs, stating:

"In the instant case the state introduced the majority of the photographs objected to by defendant for the alleged purpose of demonstrating the flight path of the bullet through the deceased's body. Yet, upon examining the record we find six of the admitted photographs were not used for any purpose. Although evidence of autopsy photographs may properly be admissible to show the flight path of the bullet through the deceased and thereby weaken defendant's claim of self-defense, we cannot approve the wholesale admission of similar grotesque and bloody photographs which add nothing new to the state's case. We conclude the trial court abused its discretion in admitting into evidence certain autopsy photographs of the deceased and defendant was prejudiced thereby." 218 Kan. at 24.

In the case before us, the trial court inquired of the medical witness, Dr. Adams, as to whether the photographs were necessary to his testimony. The physician stated they would be helpful in illustrating his testimony relative to the trajectory of the bullet.

The big issue in this case was whether defendant intentionally shot the deceased, or whether the gun accidentally fired as a result of being bumped by Ferguson. It was defendant's testimony he was pulling the gun out of his belt preparatory to shooting the gun in the air when the bumping occurred. As will be set forth in greater detail in the subsequent issue, the physical location of defendant, Ferguson and deceased in relation to each other as well as the trajectory of the bullet and the distance from which it was fired were all significant factors in determining whether decedent's death was intentional or accidental. The coroner's testimony was very relevant to this issue and the photographs were in fact utilized in his testimony. The photographs were not repetitious. These factors alone are sufficient to show the trial court did not abuse its discretion in admitting the photographs.

Before concluding this issue, it might be well to note another aspect of the matter. Legal discussions relative to the admissibility of gruesome photographs center on the concern that jurors will be so inflamed over the photographs that they will be prejudiced

against the defendant. In the case before us, the big issue was whether defendant killed Randy Sible intentionally or by accident. There is no question but that defendant's finger was on the trigger when the gun fired. This being so, it is difficult to see how autopsy photographs could inflame the jurors and affect the determination of the basic question.

In any event, we conclude the trial court did not abuse its discretion in admitting the autopsy photographs.

The sixth issue pertains to alleged juror misconduct. The defendant's version of the shooting involved Ferguson being almost between defendant and deceased when the bumping occurred. For the shooting to have happened as related by defendant would have required an almost gymnastic sequence of events. During their deliberations, the jurors attempted to reenact the movements of the principals which defendant testified caused the gun to fire. The jury was unable to recreate the shooting in the manner described by defendant. The only time the gun fired, it was in the wrong position to have hit deceased.

An experiment or demonstration is proper when conducted by the jury with the use of exhibits properly submitted to it for the purpose of testing the truth of statements made by witnesses or duplicating tests made by witnesses in open court. *Christopher & Son v. Kansas Paint & Color Co.*, 215 Kan. 185, Syl. ¶ 12, 523 P.2d 709 (1974). The jury's experiment and demonstration herein clearly comes within said rule and no error has been shown.

As a second point of alleged juror misconduct, defendant makes a rather bald assertion that one juror was coerced into voting in favor of the verdict. We have examined the record and find this point to be without merit.

The seventh issue is alleged error in failing to grant a new trial on the basis of newly discovered evidence. The issue involves a novel twist in the facts. It is undisputed that decedent died as a result of a gunshot wound to the upper left chest, said shot being fired at very close range  The victim was wearing a T-shirt. Nevertheless, there was no visible bullet hole in the front of the shirt. There was an exit wound hole in the back of the shirt and extensive blood stains on both front and back of the shirt near the wound sites. There was much speculation and theorizing at trial as to this apparent phenomenon. The State theorized defendant must have pulled the shirt up or down before firing although no witness so testified. One expert witness commented bullets

sometimes can pass through cloth leaving little or no visible path, but he had made no investigation of this subject. The jurors were curious over the absence of a hole and repeatedly attempted to locate even a small hole during their deliberations.

The newly discovered evidence on which a new trial was sought consisted of two witnesses who came forward after the trial with a natural explanation of the T-shirt phenomenon. They testified that the victim was not wearing his T-shirt in a normal manner when he was shot. Instead, he had the front of the shirt hooked over the back of his neck thereby exposing his chest. These witnesses further said the T-shirt was drawn down to its normal position by a person giving aid immediately after the shooting, probably Ferguson. Certain jurors testified at the motion relative to the jury room demonstration, previously referred to, and the search for the bullet hole.

The rules relative to the granting of new trials on the basis of newly discovered evidence were summarized in *State v. Andrews,* 228 Kan. 368, 376, 614 P.2d 447 (1980), as follows:

"The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin,* 212 Kan. 158, 510 P.2d 123, cert. den. 414 U.S. 848, 38 L.Ed.2d 95, 94 S.Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale,* 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; *State v. Larkin,* supra.) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora,* 213 Kan. 184, 515 P.2d 1086; *State v. Amey,* 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell,* 207 Kan. 152, 483 P.2d 495; *State v. Anderson,* supra.)"

The trial court, in denying the motion, concluded that the absence of a bullet hole in the front of decedent's T-shirt was a matter of curiosity rather than a material fact and that the new evidence was not likely to produce a different result upon retrial. Upon a review of the record we conclude that the trial court's denial of the motion did not constitute an abuse of discretion.

The eighth issue in this appeal is alleged error in the trial court's refusal, generally, to grant a new trial. This issue is but a restatement of all previous issues herein and needs no further discussion by virtue of the conclusions heretofore reached.

The judgment is affirmed.