No. 83,388

STATE OF KANSAS, *Appellee*, v. EDRICK L. MCCARTY, *Appellant.*

(23 P.3d 829)

Opinion filed June 1, 2001.

*Bradley P. Sylvester*, contract appellate defender, argued the cause and was on the brief for appellant.

*Lesley A. McFadden*, assistant district attorney, argued the cause, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is Edrick L. McCarty's direct appeal of his convictions of attempted aggravated robbery and first-degree felony murder. He challenges the admission of evidence concerning his house arrest status, the admission of testimony from witnesses who had reached plea agreements for their testimony, the admission of opinion testimony concerning the number of officers around the crime scene, the trial court's response to the jury's questions, the trial court's allowing the jury to use string during its deliberations, and the sufficiency of the evidence supporting his conviction.

The victim in this case, Roy Wallace, was killed in Wichita on December 20, 1998, by a close-range shotgun blast to the head.

After investigation, DeAngelo Watson, Hakeem Jackson, Hamal Jackson, Titus Franklin and the defendant, Edrick McCarty, were implicated in the killing. McCarty was eventually charged with attempted aggravated robbery and first-degree felony murder. The State alleged that DeAngelo, Titus, Hamal, Hakeem, and McCarty planned the robbery, that McCarty armed himself with a shotgun, that McCarty, Hamal, and Titus covered their faces with bandanas and proceeded to Wallace's residence, and that McCarty killed Wallace in a failed robbery attempt.

On the day of McCarty's and Hamal's trial, Hamal pled guilty. The State moved to endorse Hamal as a witness, and the court granted the motion.

Hamal and Titus testified for the State. They admitted that they, along with McCarty, participated in the attempted robbery of Wallace and that McCarty was carrying a shotgun. Both stated that McCarty was shot in the shoulder by Wallace and that McCarty shot Wallace as a result of being hit by Wallace's shot. DeAngelo also testified for the State. He did not admit to participating in the robbery, but stated that McCarty came back to 1446 N. Estelle on the evening of the attempted robbery with a gunshot wound.

McCarty testified in his own defense that he did not participate in the robbery. He stated that he was shot when he entered Titus' house at 1446 N. Estelle on the night of December 20, 1998.

The jury found McCarty guilty on both counts, and he appeals.

McCarty first challenges the trial court's admission of evidence showing that he was on house arrest. McCarty contends that because he did not present evidence as to his good character, the State should not have been allowed to introduce evidence that he had been on house arrest for committing prior crimes.

In *State v. Lumley*, 266 Kan. 939, 950-51, 976 P.2d 486 (1999), we discussed what constituted relevant evidence:

"Under K.S.A. 60-401(b), relevant evidence is evidence having any tendency [in reason] to prove any material fact. For evidence of collateral facts to be competent, there must be some material or logical connection between them and the inference or result they are designed to establish." *State v. Walker*, 239 Kan. 635,

644, 722 P.2d 556 (1986) (citing *State v Reed*, 226 Kan. 519, 524, 601 P.2d 1125 [1979])."

Further, in regard to our standard of review of such evidence, we stated:

"The admissibility of evidence lies within the sound discretion of the trial court. In *State v. Sims*, 265 Kan. 166, 175, 960 P.2d 1271 (1998), the court stated that ' "it is clear that our standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is an abuse of discretion" ' (quoting *State v. Sims*, 262 Kan. 165, 170, 936 P.2d 779 [1997])." 266 Kan. at 950.

The background behind the introduction of this evidence is relevant. Defense counsel had asked questions on cross-examination of Titus Franklin about how much time McCarty spent at Titus' house. Titus' response to questions about DeAngelo, Hakeem, Hamal, and himself were that they all spent many nights at the house. When asked if McCarty stayed at the house at night, Titus responded, "Yes, some of the time." Unsatisfied with the answer, the defense counsel asked how many times McCarty spent the night at the house. Titus responded that he did not know an exact amount. After three more questions, the defense counsel finally was successful in having the witness state that McCarty did not stay the night "very much."

The reasonable inference to be drawn from this line of questioning by the defense counsel was that McCarty was not strongly connected with the group.

The State, in an attempt to rebut this inference, asked the court for permission to ask Titus why McCarty did not stay many nights at his house. The prosecution believed that his answer would be because McCarty was on house arrest at the time. The court allowed the question to be asked, and Titus gave the predicted response.

McCarty relies on K.S.A. 60-421, which states: "If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the *sole purpose* of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility." (Emphasis added.) However, the introduction

of the house arrest was not for the sole purpose of impairing McCarty's credibility.

The State introduced the evidence of the house arrest in rebuttal of the defense counsel's attempt to show that McCarty was not an integral part of the group at 1446 N. Estelle. Further, the trial court expressly limited the testimony to that of McCarty's house arrest, and not to any underlying crimes or convictions that lead to that punishment. If the defense counsel's line of questioning was intended to establish a different fact, he should have presented that argument to the trial court. "The defendant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper. [Citation omitted.]" *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

We hold the trial court did not abuse its discretion in allowing limited evidence to be introduced concerning McCarty's house arrest.

Second, McCarty alleges the trial court erred by allowing certain witnesses to testify without disclosing their plea agreements. The defense did not specifically name such witnesses.

After a review of the record, it is apparent that the defense counsel was in fact aware of all the plea agreements reached.

Regarding nondisclosure of exculpatory evidence, we have cited the following general rules:

" 'A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is material to the guilt or innocence of the defendant. Suppression of such evidence is a violation of the defendant's Fourteenth Amendment due process rights. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant.' *State v. Carmichael*, 240 Kan. 149, 152, 727 P.2d 918 (1986).

"This 'duty to disclose exculpatory evidence to the defense exists even where no request has been made.' *State v. Kelly*, 216 Kan. 31, 34, 531 P.2d 60 (1975)." *State v. Aikins*, 261 Kan. 346, 381, 932 P.2d 408 (1997).

Further, see *State v. Scott*, 271 Kan. 103, Syl. ¶ 12, 21 P.3d 516 (2001).

The defense heavily relies on *State v. Kelly*, 216 Kan. 31, 36-37, 531 P.2d 60 (1975), where we noted that under *Giglio v. United States*, 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972), evidence tending to discredit the credibility of a key prosecution witness is exculpatory and should be disclosed. Our court summarized the rule of *Kelly* in *Taylor v. State*, 251 Kan. 272, 834 P.2d 1325 (1992):

" 'When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that the evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant.' [*Kelly*,] 216 Kan. at 36." *Taylor*, 251 Kan. at 293-94.

The record reflects and both parties cite to only two witnesses who entered plea agreements in exchange for their testimony: Titus Franklin and DeAngelo Watson. While Hamal Jackson did plead guilty, there is no indication that he did so agreeing to testify for the State. Titus explained his plea agreement in detail on direct examination. While DeAngelo did not mention his plea agreement on direct, the defense counsel had been made aware of the agreement just 3 days prior in the hearing to endorse DeAngelo as a witness. The facts clearly show that the defense counsel was made aware of the plea agreements prior to the trial.

Nothing in the record reflects that the prosecution withheld any evidence concerning the plea agreements reached. There is no basis here for a new trial to be granted.

McCarty challenges the admission of Detective Craig's testimony about the positioning of officers in the area.

After McCarty testified to the route he walked to 1446 N. Estelle at around midnight and that he was shot at the door, the prosecution put on Detective Craig in rebuttal. He testified there were several officers in the area who would have seen McCarty walking or heard the shot had such events actually occurred. Detective Craig also introduced a map which he had drawn showing the lo-

cations of all the officers in the area. The court admitted the map as evidence for demonstrative purposes only.

We review rebuttal evidence under the following standard:

"Rebuttal evidence is limited to issues placed in conflict by the adverse party. *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 742, 822 P.2d 617 (1991). When determining whether rebuttal evidence should have been admitted during trial, our standard of review is an abuse of discretion standard." *State v. Drach*, 268 Kan. 636, 645-46, 1 P.3d 864 (2000).

McCarty's version of the events on the night Wallace was killed was markedly different from those of the prosecution's witnesses. The State's witnesses placed McCarty at 1446 N. Estelle during the robbery's planning and his participation in the robbery and shooting at approximately 11 p.m. McCarty testified that he was at his father's house (who was not home), ¼ mile away, all evening and he did not arrive at 1446 N. Estelle until approximately midnight. He states he was shot in the shoulder when he entered the house.

It was reasonable for the State to be allowed to introduce evidence refuting McCarty's claims. The testimony of Detective Craig and the map he created showed there were several officers in the area that McCarty claimed he walked through. There were also officers in the area and at the time where McCarty claimed to have been shot. The detective testified that none of those officers reported hearing a shot or seeing anyone fitting McCarty's description during the time McCarty claimed the events transpired.

We find that McCarty's argument that the court abused its discretion is without merit.

McCarty alternatively contends that this testimony was improper rebuttal as it failed to establish some new fact, circumstance, or opinion not already presented in the State's case in chief. In support thereof, he cites the holdings in *State v. Childers*, 222 Kan. 32, 563 P.2d 999 (1977), and *State v. Bean*, 181 Kan. 1044, 317 P.2d 480 (1957), and the rule in *State v. Nirschl*, 208 Kan. 111, Syl. ¶ 6, 490 P.2d 917 (1971). These cases offer no support to McCarty's argument.

The fourth issue raised by McCarty is whether the trial court abused its discretion in its response to the jury's request for McCarty's testimony to be read back.

Our court reviews responses to jury requests under this standard: "K.S.A. 22-3420(3) places a mandatory duty upon the trial court to respond to the jury's request for further information as to any part of the law or evidence arising in the case, but the manner and extent of the trial court's response rests in the sound discretion of the court." *State v. Boyd*, 257 Kan. 82, Syl. ¶ 1, 891 P.2d 358 (1995).

On a Thursday evening, the jury submitted two questions to the court. One question was a request for McCarty's and DeAngelo's testimony to be read back. The next morning, the court explained to both parties the request made by the jury. The court noted that while DeAngelo's testimony was short enough that the court reporter would be able to read it back that day, "if they want McCarty, they're looking at Monday." The trial judge then told both parties that he was going to ask the jury if they could narrow their request on McCarty's testimony. Neither party objected to the proposed response by the court. The court explained the time constraints of the reporter and asked the jury if the request could be narrowed.

The jury explained to the court the specific portions of the testimony which it wanted. When asked by the court if it wanted any other statements by McCarty other than what happened on the night of the murder and the statements he gave to the police when he went to the hospital, the jury answered in the negative.

After the jury narrowed its request, the defense counsel asked for an opportunity for argument. The defense counsel then objected to a read back of anything less than McCarty's entire testimony. The court explained to the defense counsel that the jury had changed its request to specific portions of McCarty's testimony. The defense counsel then contended the court had improperly persuaded the jury to change its request.

McCarty's contention of error is without merit. His counsel did not object to narrowing the request and the jury received what it requested, as required by K.S.A. 22-3420(3).

In his brief, McCarty suggests the trial court "coerced" the jury into forgoing a reading of McCarty's entire testimony. In support, the defense cites *State v. Meyers*, 255 Kan. 3, 8, 872 P.2d 236

(1994). Although *Meyers* is applicable, our holding in *State v. Redford*, 242 Kan. 658, 667-668, 750 P. 2d 1013 (1988), is more analogous and controlling in the present case.

In *Redford*, late on Thursday afternoon the jury made a request for the testimonies of the defendant, Redford, and the victim. The next morning, the court explained to the jury that the reporter who had taken Redford's testimony was available, but the court reporter who transcribed the victim's testimony was sick and could not read back testimony until Monday. The court then allowed Redford's testimony to be read back that Friday morning. The jury reached a verdict Friday afternoon, before hearing the victim's testimony. We upheld the jury's conviction and found no abuse of discretion, stating: "The means by which the court complies with a jury request to have testimony read back is subject to its discretion." 242 Kan. at 668.

The court in the present case did not abuse its discretion. The jury, on its own volition, decided to narrow its request. The court honored the narrowed request. The record does not reflect that McCarty was prejudiced by the means in which the court chose to honor the request, nor does the defense cite to any portion of the record to show any such prejudice.

McCarty next contends it is reversible error requiring a new trial for the court to have permitted the jury to use a piece of string not introduced as evidence during deliberations. The jury requested the string, apparently to examine the trajectory of the bullets. The court met with both parties, received their input, and then granted the request, concluding the string was not new evidence, as it would only be used as an aid to interpret facts already in evidence.

In *State v. Mack*, 228 Kan. 83, 612 P.2d 158 (1980), the jury was faced with conflicting testimony of two witnesses in the identification of the perpetrator. While in deliberations, the jury conducted an experiment to determine the ability of individuals to estimate height. We held that the experiment was not error, and that the jury could use common knowledge and experience in their deliberations as it had done. "It was not misconduct or receipt of evidence out of court. Jurors are instructed to use common knowledge and experience in their deliberations." 228 Kan. at 88-89.

In *State v. Ashworth*, 231 Kan. 623, 647 P. 2d 1281 (1982), the jury used a gun and other evidence to reenact the version of the crime as told by the defendant. The jury was unable to recreate the version of events as described by the defendant. This court upheld the jury's conviction and opined that "[a]n experiment or demonstration is proper when conducted by the jury with the use of exhibits properly submitted to it for the purpose of testing the truth of statements made by witnesses or duplicating tests made by witnesses in open court." 231 Kan. 629.

In the above cases, the jury's experimentation and investigation were limited to the exhibits admitted into evidence.

The State's reliance on *State v. Arney*, 218 Kan. 369, 544 P.2d 334 (1975) (juror timed drive from crime scene to defendant's home), and *State v. Thomas*, 6 Kan. App. 2d 925, 636 P.2d 807 (1981) (juror visited crime scene), seemingly admits the trial court's actions were erroneous, but not by itself sufficiently prejudicial beyond a reasonable doubt sufficient to require a new trial to be granted. K.S.A. 22-3420(3) does permit evidence and exhibits to be presented to the jury in the defendant's presence upon the jury's request, but the statute does not permit additional evidence to be provided to the jury even if just used to interpret the facts. The court's allowing the jury to use the string was not done with the consent of counsel and was an abuse of discretion.

Notwithstanding that an abuse of discretion did occur due to improper juror investigation, it will not be grounds for reversal if the misconduct was harmless beyond a reasonable doubt:

"An exercise of discretion which results in an error of constitutional magnitude is serious and may not be held to be harmless unless the court is willing to declare a belief that it was harmless beyond a reasonable doubt. Thus, before a judge may declare the error harmless, the judge must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Bowser*, 252 Kan. 582, Syl. ¶ 2, 847 P.2d 1231 (1993). See *State v. White*, 246 Kan. 28, 37, 785 P.2d 950, *aff'd as modified* 246 Kan. 393, 789 P.2d 1175 (1990)." *Saucedo v. Winger*, 252 Kan. 718, 732, 850 P.2d 908 (1993).

The evidence showing that McCarty participated in the killing of Wallace and the underlying felony was overwhelming. Three accomplices testified that McCarty participated in the planning of

the robbery, and two of those witnesses attested that McCarty was engaged in the robbery and shot the victim. McCarty hid for 3 days after the killing took place before finally going to the hospital to receive treatments for his wounds. The person treating his wounds testified McCarty admitted to her that he shot Wallace.

McCarty's testimony was not convincing. Rebuttal evidence showed he could not have approached 1446 N. Estelle as he stated. When confronted with this testimony, he changed his testimony about the route that he had said he walked earlier.

We must also consider the reason the jury requested the string in determining whether McCarty was prejudiced by its use. The foreperson stated to the court, in response to the court's inquiry as to why the jury requested the string: "We wanted to see the— to line up the wounds." Apparently, the jury was referring to lining up the wounds on McCarty's cheek and his shoulder.

Lining up the wounds had little value in determining McCarty's guilt. If that was important to the jury, it could have been performed in some other manner. We conclude that while the string ruling was erroneous it could not have prejudiced McCarty beyond a reasonable doubt.

The final issue raised by McCarty is that there was insufficient evidence to convict him. This issue need not be further analyzed. From what we have said it is clear there was substantial competent evidence to support the defendant's' conviction. See *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998).

Affirmed.