NOT DESIGNATED FOR PUBLICATION

No. 119,262

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CASEY SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed July 12, 2019. Affirmed in part and dismissed in part.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

PER CURIAM: Casey Smith was convicted in a jury trial of aggravated assault of a law enforcement officer for driving his truck at Officer Blake Larsen. He raises three issues in his direct appeal: (1) Whether the State introduced sufficient evidence to support his conviction; (2) whether the district court erred in failing to sua sponte give a unanimity jury instruction; and (3) whether the district court violated his constitutional rights when it imposed an aggravated grid sentence against him. Finding a flawed argument in each of these issues, we affirm in part and dismiss in part.

1

During the early morning hours of November 21, 2016, Overland Park Police Officer Blake Larsen was working an overnight shift. He worked out of a marked police car equipped with a siren and red and blue lights. He also wore his full police uniform including his badge.

Officer Larsen's police car had a license plate scanner that read the license plates of passing vehicles. The scanner read the plate of a Dodge Ram truck and alerted Officer Larsen that the truck was possibly stolen. Officer Larsen decided to stop the truck. He followed the truck to a residential neighborhood in Overland Park. Officer Larsen had grounds to stop the truck because of the stolen auto alert and because the driver failed to use his turn signal at one point. The driver pulled the truck into a driveway.

Officer Larsen pulled his car up to the truck, parking his police car so that it was "angled at the truck but not directly behind it." He was about 10 to 15 feet behind the truck. He briefly turned on his siren, then turned it off but left on his flashing red and blue lights.

Then, a passenger got out of the truck. Officer Larsen, who at this point was standing in the "v" between his open car door and his car, twice asked the passenger to get back in the truck. The passenger "looked back in the truck . . . almost like he was having an exchange with somebody else in the vehicle, then moved away from the truck."

Immediately after the passenger moved away from the truck, the truck's driver "rapidly and violently accelerate[d] out of the driveway" in reverse. Officer Larsen took out his handgun. The truck's passenger door was still open. Larsen stepped out of the "v" between his car door and his car, so that he would not be trapped in the door of his car if the truck hit his car door. The truck's passenger door slammed into the front of the police car. At this point, Officer Larsen was concerned for his personal safety and well-being as

2

well as the safety of the passenger. He was "concerned about either being pinned against [his] vehicle or being run over."

After the truck hit the police car, the driver finished backing out of the driveway and the truck faced Officer Larsen head on. Officer Larsen pointed his handgun at the driver. The driver looked "directly at" Officer Larsen, then ducked behind the dashboard. Officer Larsen yelled at the passenger to get down. Rapidly, the truck went into drive and "violently accelerate[d]" towards Officer Larsen. Officer Larsen was again worried about his safety, and "concerned that [he] could die that day."

As the truck's driver drove towards him, Officer Larsen fired "between five and seven rounds" at the truck as he moved back and to the left. Larsen moved out of the street and up into a yard as he fired at the truck. The truck's driver drove away from the scene.

The State charged Smith with aggravated assault of a law enforcement officer in violation of K.S.A. 2016 Supp. 21-5412(d).

The case proceeded to a jury trial. Officer Larsen testified about his account of the incident and identified Smith as the driver of the truck. A crime scene technician who processed the scene testified that the truck's windshield sustained five bullet holes. She also testified that the passenger side window and the rear driver's side window were shattered out. A forensic scientist testified that DNA found in the truck matched Smith.

The State introduced into evidence pictures of the truck, the police car, and the general scene. The State also introduced into evidence the video footage from the police car and played it for the jury.

Smith did not testify on his own behalf, but he called a forensics expert to testify about the trajectory of the bullets. Smith's expert was unable to examine the truck itself, but used pictures of the truck to conclude: "All of the shots that were fired were fired from the passenger side of the vehicle at the time of the shooting, which indicates that the officer was not in front of the vehicle during the time of the shooting."

Smith did not request a unanimity instruction in his proposed jury instructions, nor did he object to the lack of a unanimity instruction in the State's proposed jury instructions. He also did not object to the district court's given jury instructions.

The jury found Smith guilty of aggravated assault of a law enforcement officer.

The presumptive sentences for Smith's conviction were as follows: aggravated—32 months; standard—30 months; and mitigated—28 months. At the sentencing hearing, the State requested that the judge impose the aggravated sentence. The State noted that Smith had engaged in a pattern of dangerously trying to avoid police officers. The State also pointed out that he had four previous convictions for resisting arrest in the past 10 years. Smith requested the mitigated sentence. Smith stated that he did not intend to hurt Officer Larsen and that no one was hurt during this crime. Smith also asserted that this crime likely stemmed from his drug problem, which he was working to address.

The district court judge imposed the aggravated sentence. The judge reasoned that

"on the day in question, you put this officer in grave danger. And even more so, perhaps some of the innocent citizens in that neighborhood that may have been hit by a stray bullet or may have been struck by you in the car with which you drove away.
"So what I am going to do is find that I am going to sentence you to the aggravated 32 months. You will serve that time, no probation."

Smith timely appealed.

4

*Did the State Introduce Sufficient Evidence to Support Smith's Conviction?*

Smith argues that the State failed to introduce sufficient evidence to support his conviction for aggravated assault of a law enforcement officer. Thus, he argues, this court must reverse his conviction. The State disagrees, arguing that when viewed in the light most favorable to the State, the evidence introduced at trial is sufficient to support Smith's conviction.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Here, the State had the burden to prove each element of aggravated assault of a law enforcement officer. See *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982). Thus, the State had the burden to prove the following:

- Smith knowingly placed Officer Larsen in reasonable apprehension of immediate bodily harm. K.S.A. 2016 Supp. 21-5412(a).
- Smith used a deadly weapon to do so. K.S.A. 2016 Supp. 21-5412(d)(1).
- Smith did so while Officer Larsen was a uniformed or properly identified city law enforcement officer engaged in the performance of his duty. K.S.A. 2016 Supp. 21-5412(c)(1).

On appeal, Smith contends that the State admitted insufficient evidence to prove that (1) Smith acted knowingly and (2) Officer Larsen was placed in "reasonable apprehension of immediate bodily harm."

*Knowingly*

Aggravated assault of a law enforcement officer is a general intent crime. *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015). The aggravated assault of a law enforcement officer statute establishes "knowingly" as the requisite culpable mental state. K.S.A. 2016 Supp. 21-5412(a).

> "A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2018 Supp. 21-5202(i).

Here, the State argues that it introduced sufficient evidence for the jury to find that Smith acted knowingly. A jury's verdict may rely exclusively on circumstantial evidence if that evidence furnishes a basis for a reasonable inference by the jury. Further, circumstantial evidence sufficient to support a conviction need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Officer Larsen testified that he "blipped" his siren and activated his lights after parking behind the truck. He also testified, and the police video confirms, that he twice yelled at the passenger to get back in the truck. From this, the jury could reasonably infer that Smith knew Officer Larsen was behind him. As the police video showed, Smith nevertheless chose to rapidly drive out of the driveway and then speed up in Officer Larsen's direction. Accordingly, the State presented sufficient evidence for the jury to reasonably conclude that Smith acted knowingly, that is, he chose to rapidly drive out of the driveway in a truck and speed towards Officer Larsen knowing that it could cause Officer Larsen to be in reasonable apprehension of bodily harm.

6

*Reasonable apprehension*

Next, Smith argues that the State failed to submit sufficient evidence for the jury to conclude that Officer Larsen was placed in "reasonable" apprehension of bodily harm. Officer Larsen testified that he feared for his life twice during his encounter with Smith: (1) when Smith reversed the truck towards Larsen's car which could have pinned Officer Larsen between his car and its door and (2) when Smith accelerated the truck towards Officer Larsen after pulling out of the driveway. Smith contends that Officer Larsen's fear was unreasonable. As the State correctly points out, this argument is unpersuasive.

This court reviews the evidence in the light most favorable to the State. *Chandler*, 307 Kan. at 668. Further, jurors are allowed to use their common knowledge and life experience to evaluate the evidence. *State v. McCarty*, 271 Kan. 510, 517, 23 P.3d 829 (2001). Officer Larsen testified, and the police video showed, that Smith rapidly backed the truck out of the driveway with its passenger door still open while Officer Larsen stood just a few yards behind the truck. Officer Larsen also testified that he had to quickly move out of the road to avoid being hit when the truck accelerated towards him. From this evidence, and using its common knowledge, the jury could conclude that Officer Larsen was in reasonable apprehension of immediate bodily harm when Smith rapidly backed a Dodge Ram truck out of the driveway and hit the police car mere feet from where Officer Larsen stood before accelerating toward Officer Larsen and then driving away.

*Did the District Court Commit Reversible Error By Failing to Sua Sponte Give a Unanimity Jury Instruction?*

"A defendant has a right to a unanimous jury verdict." *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). Smith argues that the district court committed reversible error by failing to sua sponte give a unanimity jury instruction. He contends that "[t]he

7

State alleged Mr. Smith committed at least two discrete acts that could constitute the crime of aggravated assault on a law enforcement officer." The State, on the other hand, argues that this case does not involve multiple acts and, therefore, a unanimity instruction was not factually appropriate. The State is correct.

Because Smith did not request a unanimity instruction, this court will review this issue for clear error. See *State v. Sayler*, 306 Kan. 1279, 1285, 404 P.3d 333 (2017). When clear error review applies, this court "'will not disturb the conviction unless it is firmly convinced the jury would have reached a different verdict had the instructional error not occurred.'" *State v. Lowery*, 308 Kan. 1183, 1216, 427 P.3d 865 (2018). The burden is on Smith to show clear error. See *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014).

Our Supreme Court has established a procedure and a test for a multiple acts case:

"In a multiple acts case, several acts are alleged and any one of them could constitute the crime charged. In order to ensure jury unanimity as to the specific act for which the defendant is charged, the trial court must either require the State to elect the particular criminal act upon which it will rely for the conviction or instruct the jury that all jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt."

"This court will apply a three-part test to determine when a multiple acts situation has occurred such that the jury must agree on the same underlying criminal act. First, the court must determine if the case truly involves multiple acts, *i.e.*, whether the defendant's conduct was part of one act or represents multiple acts which are separate and distinct from each other. Second, the court must consider whether error occurred, *i.e.*, whether there was a failure by the State to elect an act or a failure by the trial court to instruct. Third, the court must determine whether the error is reversible." *State v. Colston*, 290 Kan. 952, Syl. ¶¶ 1-2, 235 P.3d 1234 (2010).

8

*Does this case involve multiple acts?*

Smith argues that the State alleged he committed two separate acts: first, "revers[ing] his truck into Larsen's patrol car in the driveway" and second, driving "directly at Larsen in the street." The State, however, maintains that these do not constitute multiple acts.

Whether a case presents a multiple acts issue is a question of law, over which this court has unlimited review. *King*, 299 Kan. at 379.

> "[Our Supreme Court] has determined that acts are multiple acts if they are factually separate and distinct. And incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a later criminal act is motivated by a 'fresh impulse.' *State v. Colston,* 290 Kan. 952, 962, 235 P.3d 1234 (2010). Factually separate and distinct incidents are not what this court calls 'unitary conduct.' 290 Kan. at 962. The factors we have used to determine the existence of unitary conduct are: "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." [Citation omitted.]' 290 Kan. at 962." *King*, 299 Kan. at 379.

Smith concedes that he reversed the truck out of the driveway and then drove it towards Officer Larsen "at or near the same time." The State emphasizes that this factor weighs heavily against a finding that this is a multiple acts situation. The State is correct. The police car video shows that the time between the truck reversing and the truck going forward was 11 seconds or less. The truck begins reversing out of the driveway at approximately 0:36. The truck's door hits the police car at 0:40. Officer Larsen is not visible in the video, but the last shot is heard at about 0:47. Thus, the entire incident, including the two so-called "multiple acts," lasted mere seconds.

9

Second, Smith argues that the acts "occurred in different locations—one in a driveway, and one in the street." This is not convincing. The entire incident took place in the immediate vicinity of Officer Larsen's parked car, which remained stationary in front of the same driveway for the entire incident.

Third, Smith argues that there was an "intervening event." He claims that Officer Larsen pulling his service weapon after Smith had backed out, but before he sped off, constituted an intervening event. He also argues that when Officer Larsen pulled his gun, this created a "fresh impulse motivating Mr. Smith's behavior." These arguments are unavailing.

This case is comparable to *State v. Castleberry*, 301 Kan. 170, 339 P.3d 795 (2014). There, a police officer unsuccessfully tried to stop Castleberry's car. Castleberry then led police on a 45-minute-high-speed chase. Ultimately, Castleberry stopped his car before hitting stop sticks placed in the road. Then he got out of his vehicle and behaved aggressively and antagonistically, moving in an "'almost taunting'" or "'threatening'" way; he even told officers to shoot him. 301 Kan. at 173. The officers had to tase him to subdue him before arresting him. A jury convicted him of obstruction of official duty.

Like Smith, Castleberry did not request a unanimity instruction but argued on appeal that the district court erred by failing to sua sponte give one. He argued that he committed two acts that could have been the basis for his obstruction of official duty conviction: "(1) fleeing in his car, and (2) after the car chase ended, resisting officers as they tried to handcuff and arrest him." 301 Kan. at 185. Our Supreme Court disagreed. It held:

> "The shift in the action was caused by law enforcement's successful termination of the vehicle chase, rather than by Castleberry's fresh impulse to do something different. His

10

attempts to elude arrest were continuous and uninterrupted, even though the resistance evolved from a vehicle chase to a physical altercation. Moreover, if the State had attempted to prosecute Castleberry on two counts of obstruction, it is likely that he would have claimed multiplicity." 301 Kan. at 187.

Similarly, here, the footage strongly suggests that both of what Smith refers to as separate acts were in fact part of one singular act: an attempt by Smith to get away from Officer Larsen as quickly as possible. Smith necessarily had to back the truck out of the driveway to get away. Thus, this case has no multiple acts issue. Accordingly, the district court did not err by failing to sua sponte give a unanimity instruction. See *Castleberry*, 301 Kan. at 187.

*Did the District Court Violate Smith's Constitutional Rights By Imposing the Aggravated Grid Sentence?*

Finally, Smith argues that the district court violated his United States Constitution Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by sentencing him to the aggravated box sentence without submitting the reasons for the aggravated sentence to the jury. As the State correctly points out, this argument is foreclosed by Kansas Supreme Court precedent.

In *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008), our Supreme Court held that "[a] sentence to any term within the range stated in a Kansas sentencing guidelines presumptive grid block does not violate *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), or *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)." Here, Smith received the aggravated grid box sentence. Because Smith received a grid box sentence, this court lacks jurisdiction to consider his challenge to the sentence and therefore dismisses this part of his appeal. *Johnson*, 286 Kan. 824, Syl. ¶ 6. While Smith argues that *Johnson* was wrongly decided, this court is duty

bound to follow our Supreme Court's precedent and, therefore, cannot consider this argument. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011).

Affirmed in part and dismissed in part.